## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| WAG ACQUISITION, LLC,<br>*Plaintiff*<br><br>–vs–<br><br>AMAZON.COM, INC.,<br>AMAZON WEB SERVICES, INC., and<br>AMAZON.COM SERVICES LLC,<br>*Defendants* | § § § § § § § § § § § § | **W-21-CV-00815-ADA** |

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendants Amazon.com, Inc., Amazon Web Services, Inc., and Amazon.com Services LLC's ("Amazon's") Motion to Transfer Venue to the Western District of Washington. ECF No. 30. Plaintiff WAG Acquisition, LLC ("WAG") opposes the motion. ECF No. 45. Amazon filed a reply to further support its motion. ECF No. 48. Upon review, Amazon's motion is **GRANTED**.

### I.      FACTUAL BACKGROUND

In its complaint, WAG claims Amazon infringed on U.S. Patent Nos. 9,742,824 ("the '842 patent"), 9,729,594 ("the '594 patent"), and 9,762,636 ("the '636 patent") (the "WAG patents"), which relate to a process for delivering audio and video files over the internet. ECF No. 1 at ¶ 12. WAG, the owner of the WAG patents, is a limited liability company organized under the laws of the state of New Jersey, and its principal place of business is also in New Jersey. *Id.* at ¶ 4. Defendants Amazon.com, Inc. and Amazon Web Services, Inc. are corporations organized under the laws of the state of Delaware, and their principal places of business are in Washington. *Id.* at ¶ 5–6. Amazon.com Services LLC is a limited liability company organized under the laws of the state of Delaware, and its principal place of business is in Washington. *Id.* at ¶ 7. Among other

1

products and services, Amazon provides on-demand and streaming video services. ECF No. 22 at ¶ 2. While Amazon's principal places of business are in Washington, Amazon sell its products and services throughout the United States. *Id.* at ¶ 10. Defendants Amazon Web Services, Inc. and Amazon.com Services LLC are registered to do business in the State of Texas, and Defendant Amazon.com Services LLC has an office in the Western District of Texas. *Id.*

WAG filed three separate cases in this district all asserting infringement of the WAG patents. ECF No. 26 at 2; *WAG Acquisition L.L.C. v. Amazon.com, Inc. et al.*, No. 6:21-cv-00815 (W.D. Tex. Aug. 6, 2021); *WAG Acquisition, L.L.C. v. Google LLC et al.*, No. 6:21-cv-00816 (W.D. Tex. Aug. 6, 2021); *WAG Acquisition, L.L.C. v. Netflix, Inc.*, No. 6:21-cv-01083 (W.D. Tex. Oct. 18, 2021). One of these cases has since been transferred to the Northern District of California. *WAG Acquisition, L.L.C. v. Netflix, Inc.*, No. 6:21-cv-01083 (W.D. Tex. Aug. 31, 2022), ECF No. 50. In the other case still in this Court, there is a pending motion to transfer venue to the Northern District of California. *WAG Acquisition, L.L.C. v. Google LLC et al.*, No. 6:21-cv-00816 (W.D. Tex. Apr. 4, 2022), ECF No. 40. In the Western District of Washington, WAG is currently litigating a case asserting patents related to the WAG patents asserted here. *WAG Acquisition, L.L.C. v. Flying Crocodile Inc.*, No. 2:19-cv-1278 (W.D. Wash. Apr. 25, 2014). The case is currently stayed pending *ex parte* reexamination before the Patent and Trademark Office. *Id.* (W.D. Wash. Dec. 28, 2021), ECF No. 285.

After answering WAG's complaint, Amazon filed the instant motion to transfer. ECF No. 30. Amazon does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Western District of Washington ("WDWA") is a more convenient venue, pointing to, among other factors, the location of potential witnesses and the pending litigation on related patents in the WDWA. *Id.* at 5. WAG contends that the case should

remain in the WDTX, pointing to, among other factors, the other pending case in this Court involving the WAG patents and Amazon's presence in the Western District of Texas. ECF No. 45 at 14, 16−17.

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests

decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

### A. WAG's Argument that Amazon Waived its Right to Bring a Motion to Transfer Venue Lacks Merit

As an initial matter, WAG argues that Amazon waived its right to bring a motion to transfer venue because Amazon failed to raise this transfer issue in the Case Readiness Status Report ("CRSR"). ECF No. 45 at 8. Under this Court's *Amended Standing Order Regarding Notice of Readiness for Patent Cases* in effect at the time the complaint was filed, parties are required to file a CRSR within seven days after the defendant responds to the initial pleadings or, if there are related cases, within seven days after the last defendant among the related cases responds to the initial pleadings. *Amended Standing Order Regarding Notice of Readiness for Patent Cases*, at 1 (W.D. Tex., Waco Div. June 16, 2021). The parties are asked to identify all pre-*Markman* issues

that exist at the time of filing the CRSR. *Id.* This Court's *Second Amended Standing Order Regarding Motions for Inter-District Transfer*, which was in effect at the time that Amazon filed the instant motion to transfer, explains that motions for inter-district transfer will be resolved before the *Markman* hearing. *Second Amended Standing Order Regarding Motions for Inter-District Transfer*, at 1 (W.D. Tex., Waco Div. Aug. 18, 2021). WAG argues that because this Court aims to resolve inter-district transfer motions before the *Markman* hearing, transfer motions are pre-*Markman* issues that must be included in the CRSR, otherwise a defendant's ability to file a transfer motion is waived. ECF No. 45 at 9. Because Amazon failed to include its intention to file a transfer motion in this case in the CRSR, WAG argues that Amazon waived its right to bring the instant motion. *Id.*

However, at the time that Amazon filed its motion to transfer venue, "[p]arties [were] free to file transfer motions without leave until eight weeks before *Markman* hearings." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. W-20-CV-00969, 2022 WL 272115, at *2 (W.D. Tex. Jan. 28, 2022). In March of this year, the Court changed the deadline for motions to transfer venue. *The Standing Order Governing Proceedings (OGP) 4.0—Patent Cases*, at 4 (W.D. Tex., Waco Div. Mar. 7, 2022). But because this case was filed before the release of the standing order setting the new deadline for transfer motions, the new deadline does not apply. Amazon only needed to file its transfer motion more than eight weeks before *Markman* hearing. When Amazon filed the instant motion, the Court had not yet scheduled the *Markman* hearing. ECF. No. 35 (entering a scheduling order six weeks after Amazon filed the instant motion). And once scheduled, the *Markman* hearing was set for June 3, 2022. ECF No. 35. Amazon filed this motion on January 6, 2022. ECF No. 30. Amazon's motion was filed twenty-one weeks before the initially scheduled date for the *Markman*

hearing in this case. Amazon met this Court's timing requirements under the *Second Amended Standing Order Regarding Motions for Inter-District Transfer*.

Under the *Amended Standing Order Regarding Notice of Readiness for Patent Cases* in effect at the time the complaint was filed, parties are not required to identify whether the defendant will file motion to transfer venue in the future. The parties are ordered to identify pending motions, but they are not required to anticipate all motions that may be filed in the future. *Amended Standing Order Regarding Notice of Readiness for Patent Cases*, Ex. A (W.D. Tex., Waco Div. June 16, 2021). While the Court intends to resolve motions for inter-district transfer before the *Markman* hearing, the Court does not ask defendants to identify whether they intend to file a motion to transfer a mere seven days after responding to the plaintiff's complaint. *See id.* at 1 (requiring the CRSR to be filed within seven days of the defendant's response to the plaintiff's complaint). Under the *Second Amended Standing Order Regarding Motions for Inter-District Transfer*, the Court provides defendants until eight weeks from the date of the *Markman* hearing to file a motion to transfer venue. *Ravgen*, 2022 WL 272115, at *2. This time frame gives defendants the opportunity to determine whether a motion to transfer venue is appropriate. Amazon timely filed the instant motion under this Court's standing orders. WAG's argument that Amazon waived its right to bring this motion is without merit.

### B.  The Public and Private Transfer Factors Weigh in Favor of Transfer

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the WDWA. Neither party contests that venue could be proper in the WDWA. Amazon's principal place of business is in the WDWA, and it has engaged in sales of its allegedly infringing products there. This Court therefore finds that venue would have been proper in the WDWA had the suit originally been filed there. Thus, the Court

now analyzes the private and public interest factors to determine if the WDWA is a clearly more convenient venue than the WDTX.

### i.   *The Private Interest Factors Weigh in Favor of Transfer*

#### 1.   The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

According to Amazon, most of the relevant technical documents are stored in the WDWA or in Portland, Oregon. ECF No. 30 at 10. Amazon further alleges that no technical documents are stored in the WDTX. *Id.* Amazon also claims that the allegedly infringing products were primarily developed in the WDWA and Portland. *Id.* ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ Amazon admits that it has an office in Austin, but it states that no sources of proof were created in or are accessed from the WDTX. ECF No. 30 at 10. WAG responds that while the relevant documents are not stored in the WDTX, they are easily accessed here. ECF No. 45 at 10. WAG claims that because Amazon's evidence is primarily electronic, it can be accessed anywhere. *Id.* WAG also points to an Amazon employee that has access to the source code located in Dallas, Texas to show that the relevant technical documents can be accessed in the WDTX. *Id.*

The parties do not dispute that WAG's evidence located in New Jersey and Pennsylvania is no more easily accessed in the WDTX than the WDWA. ECF No. 30 at 11; ECF No. 45 at 10 n.1. Thus, the location of WAG's evidence does not impact the determination of this factor.

More of Amazon's sources of proof likely reside in, and are likely more easily accessed in, the WDWA than the WDTX. Amazon's headquarters are located in the WDWA. Some of the documents relevant to the alleged infringement are most likely stored in those offices. Other documents are likely stored in nearby Amazon offices in Portland. While not within the WDWA, the documents located in Portland are more easily accessed in the WDWA than in the WDTX. *See Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389, 2022 WL 126490, at *3 (W.D. Tex. Jan 12, 2022) (explaining that evidence in Irving, Texas is relatively easier to access in the WDTX than in the NDCA, even though Irving is not within the WDTX).

While Amazon does not dispute that many of the relevant documents are accessible electronically, the Federal Circuit has rejected the argument that this factor is neutral where the relevant evidence could be accessed electronically from the WDTX. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at * 4 (Fed. Cir. Apr. 22, 2022). Additionally, the Federal Circuit has held that it is an error not to consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Amazon has claimed that most documents were created and are maintained by their custodians in the WDWA and in nearby Portland. ECF No. 30 at 10. Even though these documents may be accessible in the WDTX electronically, the Court must still consider the location of the documents and their custodians when evaluating this factor. WAG's argument that this factor should be neutral because the documents are accessible electronically is in disagreement with recent Federal Circuit rulings.

Additionally, Amazon's evidence located in the Washington-Dulles area of Virginia and in the Netherlands does not render this factor neutral. The evidence in Virginia and the Netherlands is no more easily accessed in the WDTX than it is in the WDWA; this evidence does not affect the Court's analysis of this factor. *See In re Toyota Moto Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and the transferee forum is not altered by the presence of other . . . documents in places outside both forums."). WAG points to one Amazon employee who works in Dallas, Texas and may have access to some of the relevant technical documents. ECF No. 45 at 11. However, one employee near the WDTX with access to some relevant documents does not outweigh the large amount of evidence stored and maintained in or near the WDWA. WAG has not disputed that none of the relevant evidence is stored or maintained in WDTX.

Because many of the relevant documents are stored and maintained in or near the WDWA, the Court finds that this factor favors transfer.

> 2.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345).

The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

Amazon has identified non-party witnesses related to RealNetworks's RealPlayer product and non-party witnesses related to Microsoft's NetShow product. In response, claiming that Amazon "cherry-picked" potential witnesses, WAG identified non-party witnesses related to the Apple's QuickTime product and non-party witnesses related to the Icecast product. Each set of witnesses will be considered below.

### a.   RealNetworks Witnesses

According to Amazon, RealNetworks created a RealPlayer media player, which is relevant to this suit. ECF No. 30 at 11.  RealPlayer documentation is cited as prior art in the '594 Patent. '594 Patent 7. Amazon states that it intends to argue that the WAG patents are invalid in view of the RealPlayer prior art. ECT No. 30 at 11. Amazon claims that six current and former RealNetworks employees have knowledge relevant to the case: (1) Robert D. Glaser, (2) Yuriy A. Reznik, (3) Gary Greenbaum, (4) Karl Olav Lillevold, (5) Rahul Agarwal, and (6) Phillip Barrett. *Id.* at 12. All of these witnesses are located in the WDWA. *Id.* In response, WAG argues that these witnesses are unlikely to be called at trial and were "cherry-picked" by Amazon to support the instant motion. ECF No. 45 at 11−12.

The Court does not disagree with WAG's argument that prior art witnesses are generally unlikely to appear at trial. The Court also does not disagree with WAG's argument that Amazon's named prior art witnesses appear to be selectively chosen from those located in the WDWA. However, under current Federal Circuit law, this Court must consider prior art witnesses in determining the outcome of the compulsory process factor, even if prior art witnesses are generally

unlikely to testify at trial. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). WAG has not provided a rationale specific to this case that supports discounting the RealNetworks prior art witnesses. Thus, the presence of the identified RealNetworks witnesses in the WDWA weighs in favor of transfer.

b. NetShow Witnesses

In addition to the RealPlayer created by RealNetworks, Amazon has identified Microsoft's NetShow as a prior art product that it may rely on in its invalidity argument. ECF No. 30 at 11. According to Amazon, after creating NetShow, Microsoft acquired VXtreme and incorporated VXtreme's product into the NetShow product. *Id.* at 12−13. Microsoft later rebranded NetShow as Window's Media Player. *Id.* at 13. Amazon identifies three current or former Microsoft employees that may testify at trial regarding these prior art products: (1) Wei-ge Chen, (2) Anders Edgar Klements, and (3) Nosakhara Omigui. *Id.* All of these witnesses are located in the WDWA. *Id.* WAG argues that these witnesses are not relevant to the determination of this factor because Amazon did not include the NetShow product in its invalidity contentions. ECF No. 45 at 12. Amazon disagrees. ECF No. 48 at 4. Amazon provided the Court its invalidity contentions, which included references to patents naming Messrs. Klements, Omigui, and Chen as inventors. ECF No. 49-2 at 5, 7.

The Court is satisfied with Amazon's evidence showing that it included the NetShow prior art references within its invalidity contentions. For the same reasons discussed above with regard to the RealNetworks witnesses, the presence of the NetShow witnesses in the WDWA weighs in favor of transfer.

### c.   QuickTime and IceCast Witnesses

In response to Amazon's motion, WAG identifies two other prior art systems that Amazon has relied on in its invalidity contentions that Amazon did not include within its motion to transfer venue. ECF No. 45 at 12. The first is Apple's QuickTime product. *Id.* WAG states that non-party witnesses with knowledge of the QuickTime product are likely to reside in California, which it outside of both the WDTX's and the WDWA's subpoena power. *Id.* The second product is Icecast. *Id.* WAG identifies two witnesses related to the Icecast product: (1) Jack Moffit of Twin Cities, Minnesota and (2) Barath Raghavan of Los Angeles, California. *Id.* Messrs. Moffit and Raghavan are also outside of the subpoena power of both the WDWA and the WDTX. While the potential QuickTime and Icecast witnesses are not within the reach of the WDWA's subpoena power, they are also not within the reach of the WDTX's subpoena power. These witnesses identified by WAG have no bearing on whether this case should be transferred.

### d.   Conclusion

Because the identified non-party witnesses are either located in the WDWA or outside of the reach of both WDTX's and the WDWA's subpoena power, the Court finds that this factor favors transfer.

### 3.   The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses

traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, "time is a more important metric than distance." *Id.* When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

The potential witnesses from Amazon and WAG will be considered separately below.

a.   Amazon Employees Outside of the WDTX

According to Amazon, most of the employees knowledgeable regarding the design and development of the accused products work in Seattle, Washington or in Portland, Oregon. ECF No. 30 at 14; *see* ECF No. 30-81 at ¶ 4−5 (stating that the "majority" of the 180 employees knowledgeable about the MediaLive, MediaConvert, MediaPackage, and MediaStore products are located in Portland and a "small number" are located in Santa Clara, California and Vancouver, British Columbia, Canada); ECF No. 30-82 at ¶ 3−4 (stating that the "majority" of the 350 employees knowledgeable about the Prime Video product are located in the Seattle area and a "small number" of the knowledgeable employees are located in Los Angeles, California; London, England; Stockholm, Sweden; Toronto, Ontario, Canada; Arlington, Virginia; and Bangalore, India); ECF No. 30-83 at ¶ 4−5 (stating that the "majority" of the 170 employees knowledgeable about the CloudFront product are located in the Seattle area and a "small number" of the knowledgeable employees are located in Vancouver, British Columbia, Canada; San Francisco, California; and Dublin, Ireland). Furthermore, Amazon states that most of the employees knowledgeable about the marketing and financial information for the accused products work in

Seattle or Portland. ECF No. 30 at 14; *see* ECF No. 30-81 at ¶ 7 (stating that the employees knowledgeable about marketing and financing for the MediaLive, MediaConvert, media Package, and MediaStore products are located in Portland and Seattle); ECF No. 30-82 at ¶ 6 (stating that employees knowledgeable about financing for the Prime Video product are located "primarily" in Seattle); ECF No. 30-83 at ¶ 7 (stating that it is the declarant's understanding that the employees knowledgeable about the marketing and financing for the CloudFront product are located in Seattle). Amazon identifies four employees based in Seattle that may testify at trial: ██████ ████████████████████████████████████████████████████████████████ ECF No. 48 at 2. Amazon identifies one employee based in Portland that may testify at trial: ████████████ *Id.*

WAG argues that Amazon's discussion of relevant witnesses is speculative. ECF No. 45 at 13. WAG also argues that Amazon's design and development employees are unlikely to testify at trial. *Id.* at 15. Additionally, WAG argues that Amazon's increasing presence in the WDTX reduces the inconvenience of trial in the WDTX for witnesses on the West Coast. *Id.* at 14.

The Court holds some doubt of the precision of Amazon's evidence. Amazon provides the Court with little more than that the "majority" of its employees with relevant knowledge are located in Seattle and Portland. ECF No. 30-81 at ¶ 4; ECF No. 30-82 at ¶ 3; ECF No. 30-83 at ¶ 4. However, the Court concludes that some Amazon employees located in Seattle and Portland may testify at trial. Additionally, despite WAG's arguments otherwise, Amazon's increasing presence in the WDTX does not significantly reduce the inconvenience to these witnesses. These witnesses would still have to travel from the West Coast to Waco to attend trial in the WDTX.

For the Amazon employees in Seattle and Portland, the WDWA is clearly a more convenient venue. The willing witnesses located in Seattle could attend trial with little or no travel if the case were transferred to the WDWA. The willing witnesses in Portland would only have to

travel one hour by plane or three hours by car to attend trial in the WDWA. ECF No. 30 at 15. These witnesses would have to travel for a significant amount of time if the case remained in the WDTX. ECF No. 30 at 15 (stating that witnesses based in Seattle and Portland would have six hours of travel time to appear in Waco). For Amazon employees in California and Vancouver, the WDWA is likely a more convenient venue because these employees would have less travel time to attend trial in the WDWA than in the WDTX. For Amazon employees located in London, Stockholm, Toronto, Arlington, Bangalore, and Dublin, travel to either the WDWA or the WDTX would require a significant amount of time. Even though some of these witnesses may be "slightly more inconvenienced" by travelling to the WDWA or the WDTX, the convenience of these witnesses does not significantly impact the outcome of this factor. *See In re Apple Inc.*, 979 F.3d. at 1342 (criticizing the district court for placing too much significance on the fact that potential witnesses are geographically closer to one district than the other). Overall, Amazon's willing witnesses outside of the WDTX weigh in favor of transfer.

### b.  Amazon's Texas-based Employees

Amazon admits that forty employees with knowledge of the Prime Video product work in Austin, Texas within the WDTX. ECF No. 30-82 at ¶ 5. Amazon further admits that one employee with knowledge of the CloudFront product also works in Austin, Texas. ECF No. 30-83 at ¶ 6. Amazon also admits that one employee with knowledge of the MediaLive product works remotely from Dallas, Texas. ECF No. 30-81 at ¶ 6. WAG points to the presence of these Amazon employees in and near the WDTX as part of its reasoning that this factor should be found neutral. ECF No. 45 at 14−15.

If any of the approximately forty-one Amazon employees in Austin with knowledge of the Prime Video and CloudFront products were to testify at trial, the WDTX is clearly a more

convenient venue. And if the one employee in Dallas, Texas with knowledge of the CloudFront product were to testify at trial, the WDTX would be a more convenient venue. However, based on Amazon's evidence, the Court assumes that more of the relevant employees work in Seattle and Portland than in the state of Texas. Thus, the presence of these potential witnesses in or near the WDTX is outweighed by the majority of the potential witnesses in or near the WDWA.

c.   WAG's Witnesses

The parties do not dispute that WAG's potential witnesses are located in New Jersey and Pennsylvania. ECF No. 30 at 15; ECF No. 45 at 12−13. However, the parties disagree about whether the WDWA or the WDTX may be more convenient for WAG's potential witnesses. Amazon claims that the WDWA would be more convenient for William Grywalski and Harry Emerson, who are both located in New Jersey. ECF No. 30 at 15. Amazon claims that the WDWA is a more convenient forum for these witnesses because the travel time from Newark, New Jersey to Seattle is one hour less than the travel time from Newark, New Jersey to Waco. *Id.* Amazon claims that neither the WDWA nor the WDTX is a convenient forum for WAG's witness, Harold Price, who is located in Pittsburgh, Pennsylvania, because Mr. Price will have to travel a great distance regardless of whether trial takes place in the WDWA or the WDTX. *Id.* WAG argues that the WDTX is a more convenient forum for all of its witnesses because the WDTX is significantly closer to both New Jersey and Pennsylvania than the WDWA. ECF No. 45 at 12−13.

The Court finds that neither the WDWA nor the WDTX is a convenient venue for WAG's potential witnesses. WAG's potential witnesses in New Jersey and Pennsylvania will have to travel a significant distance to testify at trial in either district. While the WDTX is closer to the potential witnesses in New Jersey and Pennsylvania, the Federal Circuit has emphasized that travel time is more important than distance in determining this factor. *In re Google, LLC*, No. 2021-170, 2021

WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). While WAG's potential witnesses may be slightly more inconvenienced by travelling to either the WDWA or the WDTX, this slight inconvenience does not weigh heavily on the outcome of this factor. *See In re Apple Inc.*, 979 F.3d. at 1342 (criticizing the district court for placing too much significance on the fact that potential witnesses are geographically closer to one district than the other).

### d.   Conclusion

The Court finds that more of Amazon's potential witnesses are likely located in or near the WDWA than in the WDTX. The Court further finds that neither the WDTX nor the WDWA is a convenient forum for WAG's potential witnesses. The Court concludes that this factor favors transfer.

### 4.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010). However, the Federal Circuit has held that it is an error to determine that this factor disfavors transfer based primarily on co-pending litigation with pending motions to transfer. *In re Google Inc.*, 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

Amazon argues that practical considerations favor transfer because *WAG Acquisition, L.L.C. v. Flying Crocodile Inc.*, which involves patents that relate to the patents asserted in this case, is pending in the WDWA. ECF No. 30 at 16. WAG argues that judicial economy is best served if this case remains in the WDTX because there is a related case*, WAG Acquisition, L.L.C. v. Google LLC*, involving the same patents in this District. ECF No. 45 at 17. However, Amazon notes that in *WAG Acquisition, L.L.C. v. Google LLC*, the defendants filed a motion to transfer venue to the Northern District of California. ECF No. 48 at 6. In *Flying Crocodile*, there is no pending a motion to transfer venue—the case was already transferred to the WDWA from the District of New Jersey. *WAG Acquisition, L.L.C. v. Flying Crocodile Inc.*, No. 2:19-cv-1278 (W.D. Wash. Aug. 14, 2019), ECF No. 168.

Both the WDWA and the WDTX have co-pending cases involving similar technology. However, because *Flying Crocodile* in the WDWA involves different patents than those asserted in the two cases pending before the WDTX, judicial economy would be best served if both cases asserting the same WAG patents in the WDTX remained in the same forum. If one or both of the WAG cases in the WDTX are transferred, these related cases will not remain in the same forum. But when co-pending litigation has pending motions to transfer venue, the co-pending litigation should be discounted in determining whether this factor disfavors transfer. *See In re Google, Inc.*, 2017 WL 977038, at *2. The Court finds that judicial economy could also be served if this case were transferred to a court that is familiar with the technology at issue, such as the WDWA.

Because judicial economy could be served if this case were in either the WDTX or the WDWA, the Court finds that this factor is neutral.

### ii.    The Public Interest Factors

#### 1.    Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Amazon argues that this factor favors the WDWA because Judge Rothstein presides over *WAG Acquisition, L.L.C. v. Flying Crocodile Inc.*, which involves patents related to the patents asserted in this case. ECF No. 30 at 18. Amazon claims that Judge Rothstein will construe claim terms in *Flying Crocodile* that are recited in the claims asserted in the present case. *Id.* While Judge Rothstein has presided over *Flying Crocodile* for over three years, the case is currently stayed. *WAG Acquisition, L.L.C. v. Flying Crocodile Inc.*, No. 2:19-cv-1278 (W.D. Wash. Dec. 28, 2021), ECF No. 285. Judge Rothstein has not had the opportunity to construe the claim terms. *Id.* at 5. Judge Rothstein has no more familiarity with the technology in the WAG patents than this Court.

Amazon also argues that because this Court has more cases than Judge Rothstein in the WDWA, reducing court congestion favors the WDWA. ECF No. 30 at 18. But despite this Court's large docket, it has proven to resolve cases expeditiously—this Court has consistently been able to bring patent cases to trial within two years after filing a complaint.[1] The Federal Circuit has

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing*

emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). Based on data from earlier this year, patent cases in this Court are terminated within a median of 154 days; before Judge Rothstein, patent cases were terminated within a median of 931 days. ECF No. 30-78. The data available to the Court indicates that this Court would likely be able to resolve this dispute more quickly than if Judge Rothstein presided over this case.

The Court finds this factor weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather

---

*Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

According to Amazon, the WDWA has a far greater local interest in this case than the WDTX. ECF No. 30 at 18. Amazon admits that it has offices within the WDTX, but it argues its offices in the district are insufficient to create a particular local interest in the WDTX. *Id.* at 19. Instead, Amazon argues that the local interest lies in the WDWA, where the accused Prime Video and Cloudfront services are designed and developed. *Id.* at 18. Amazon further argues that the WDTX has no local interest in adjudicating WAG's claims because WAG is based in New Jersey and has no connection to the district. *Id.* at 19. In response, WAG argues that the WDTX has a stronger local interest based on Amazon's general presence in the district and its plan to add more employees to its offices in the WDTX. ECF No. 45 at 18. WAG does not dispute Amazon's assertion that the events giving rise to the suit occurred in the WDWA. *Id.*

Amazon has met its burden of showing that more events that gave rise to the suit likely took place in the WDWA than in the WDTX. Amazon has provided evidence showing that many of the events that gave rise to the suit took place in the WDWA. ECF No. 30-82 at ¶ 3; ECF No. 30-83 at ¶ 4. WAG has not asserted that any of the events that gave rise to the suit occurred in the

WDTX. ECF No. 45 at 18. WAG only points to Amazon's general presence in the district. *Id.* However, the Federal Circuit has stated that an entity's general presence in a district should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1345. More weight should be placed on where the events that gave rise to the suit occurred. *Id.* Even if the Court assumes that some of the events that gave rise to this suit took place in the WDTX because some of Amazon's employees in this district work on the accused products, Amazon has shown that the design and development of the Prime Video and Cloudfront services primarily took place in the WDWA. ECF No. 30-82 at ¶ 3; ECF No. 30-83 at ¶ 4. And the design and development of the MediaLive, MediaConvert, MediaPackage, and MediaStore services primarily took place in Portland, Oregon, which is outside of both the WDTX and the WDWA. ECF No. 30-81 at ¶ 4. Additionally, Amazon's headquarters are in the WDWA, which further suggests that the WDWA has a greater local interest in the suit. ECF No. 30 at 7.

Because Amazon has met its burden of showing that the WDWA has a greater local interest in deciding this case than the WDTX, the Court finds that this factor weighs in favor of transfer.

### 3.  Familiarity of the Forum with the Law That will Govern the Case

Amazon and WAG agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 30 at 19; ECF No. 45 at 18. The Court agrees.

### 4.  Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Amazon and WAG agree that this factor is neutral—there are no potential conflicts here. ECF No. 30 at 19; ECF No. 45 at 18. The Court agrees.

## IV.   CONCLUSION

Having considered the private and public interest factors, the Court finds that three of the factors are neutral, four favor transfer, and one disfavors transfer. A decision to uproot litigation

and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. Here, the court congestion factor weighs against transfer. However, the sources of proof, availability of the compulsory process for non-party witnesses, cost of attendance for willing witnesses, and local interest factors favor transfer. In light of the weight accorded to each of the factors in favor of transfer, Amazon has met its burden to show that the WDWA is a clearly more convenient forum than the WDTX. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| Cost of attendance for willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Disfavors transfer |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Amazon's Motion to Transfer Venue to the Western District of Washington is **GRANTED** (ECF No. 30). The Court **ORDERS** that this matter be transferred to the Western District of Washington.

**SIGNED** this 5th day of October, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE